**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

D'ANDRE M. ALEXANDER

    Plaintiff,                  CIVIL ACTION NO. 16-cv-12069

    v.                          DISTRICT JUDGE TERRENCE G. BERG

ANN HOFFMAN, et al.,      MAGISTRATE JUDGE MONA K. MAJZOUB

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander, currently a prisoner at the Macomb Correctional Facility in New Haven, Michigan, filed this *pro se* civil rights case on June 6, 2016. (Docket no. 1.) He names several employees of the Michigan Department of Corrections ("MDOC") Saginaw Correctional Facility ("SRF") as defendants: Ann Hoffman, an Assistant Resident Unit Specialist; Scotty Freed, a Hearings Investigator; O'Bell T. Winn, a Deputy Warden; Donald Ricumstrict, also a Deputy Warden; and Shannon Flaugher, Randall VanSumeran, and Delardon Thomas, all Correctional Officers. Plaintiff alleges Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution by conspiring together to plant a knife in Plaintiff's duffle bag, which resulted in a misconduct ticket and ultimately a transfer to the Chippewa Correctional Facility in Kincheloe, Michigan. (Docket no. 1 at 8–9.) Plaintiff seeks a declaratory judgment that Defendants broke the law, an injunction to have the misconduct conviction removed from his prison record, compensatory and punitive damages, and "any additional relief this Court deems just, proper, and equitable." (*Id.* at 18–19.) He cites 42 U.S.C. §§ 1983, 1985, and 1986, and he sues Defendants Hoffman and Freed in their

official and individual capacities, and sues the remaining Defendants in their individual capacities only. (*Id.* at 5–6.)

Before the Court is a Motion for Summary Judgment filed by Defendants Flaugher, Freed, Winn, Ricumstrict, VanSumeren, and Thomas.[1] (Docket no. 24.) Plaintiff filed a Response. (Docket no. 25.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 9.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

## I. Recommendation

For the reasons that follow, the undersigned recommends that Defendants' Motion for Summary Judgment [24] be **GRANTED IN PART and DENIED IN PART**. The Motion should be granted as to all claims against Defendant Flaugher, and as to the official capacity claims against Defendant Freed, but denied as to Plaintiff's individual capacity claims against Defendant Freed, and as to Plaintiff's claims against Defendants Winn, Ricumstrict, VanSurman, and Thomas.

## II. Report

### A. Factual Background

Plaintiff's issues at SRF began in April 2013. After he filed a grievance against an unnamed staff member, he claims that Defendant Hoffman was assigned to review the grievance, and, during the review process, she threatened to plant a knife in Plaintiff's cell. (Docket no. 1 at 6.) Plaintiff then filed a grievance against Defendant Hoffman, claiming that she was biased in her review of his previous grievance. He listed Defendant Flaugher as a witness to Defendant

---

[1] Defendant Hoffman has not yet been served; she is the subject of a Motion for Order of Service filed by Plaintiff (docket no. 27), which the undersigned will address separately.

2

Hoffman's conduct. Plaintiff claims that shortly after he filed that grievance against Defendant Hoffman, Defendant VanSumeren threatened to transfer Plaintiff to the "600 unit," a partial segregation unit at SRF, and that Defendant Flaugher told him he would have "Russel" reject the grievance against Defendant Hoffman. (Docket no. 1 at 7–8.)

Plaintiff claims that, on June 7, 2013, Defendant Hoffman approached him as he was leaving breakfast and stated, "'enjoy your last meal because you'll be saying bye bye to SRF real soon. I'm going to have [Defendant] Winn get you out of here.'" (*Id.* at 8.) Plaintiff was then stopped by an unknown officer, handcuffed, and escorted to the partial segregation unit. (*Id.*) When he arrived, he was informed that Defendant Hoffman found a knife in Plaintiff's duffle bag, and that Defendant Hoffman had therefore written a misconduct ticket written against him for possession of a weapon. Defendant Scott presided over the hearing on the misconduct ticket; Plaintiff was found guilty and sentenced to thirty days in segregation. (*Id.*) Plaintiff claims that Defendant Freed "refused to obtain the key piece of evidence that would have aided in Plaintiff's defense," namely a recording of a phone call between Plaintiff and his sister in which Plaintiff claims to have expressed concern that he was being set up.

Plaintiff claims that later on in June, Defendants Winn and Ricumstrict each separately approached him and threatened him with being transferred to "URF, all the way up North." (Docket no. 1 at 9.) And, on June 27, 2013, he was in fact transferred. Plaintiff claims that, as a result of the transfer, he was unable to complete a correspondence course, the "Pilgrim Theology Seminary," or sign up for other classes. (*Id.* at 10.) Plaintiff also lost yard time, access to other recreational facilities that SRF had but URF does not, and family visits, as URF is too far away for his sister to drive. Plaintiff also claims that URF is a hostile environment, and that many of the MDOC staff members there have used racial slurs when addressing him. (*Id.* at 11.)

3

Plaintiff filed the instant complaint on June 6, 2016, alleging that Defendants violated his rights under the First, Fourth, and Eighth Amendments to the United States Constitution. (*Id.* at 5.) Defendants then filed a Motion for Summary Judgment, claiming that the case should be dismissed because Plaintiff did not exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). (Docket no. 24.) Defendants also assert that the claims against Defendants Freed in his official capacity should be dismissed because "[t]he Eleventh Amendment to the United States Constitution bars suit in federal court against a state, its agencies, and officials sued in their official capacity." (*Id.* at 17.)

**B. Governing Law**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.	Analysis**

*1. Failure to Exhaust*

The PLRA requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[P]roper exhaustion of administrative remedies . . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation omitted).

MDOC's administrative policies (*see* docket no. 24-2) require a prisoner to file a Step I grievance within five days of attempting to informally resolve the grievable issue with prison

staff. MDOC Policy Directive 03.02.130(V). The grievance must include information regarding the facts of the issue being grieved (i.e., who, what when, where, why, how), and the dates, times, places, and names of the individuals involved. MDOC Policy Directive 03.02.130(R). MDOC is required to respond within fifteen business days, unless an extension is granted. MDOC Policy Directive 03.02.130(X). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, within ten business days of receipt of the response or, if no response is received, "within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form [], to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due . . . ." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved "through all three steps of the grievance process in compliance with [the] policy." MDOC Policy Directive 03.02.130(B).

There are two grievances at issue in this case, Grievance No. SRF-2013-06-1010-28b, and Grievance No. SRF-2013-08-1251-24z. A review of the grievances reveals that they both cover all of Plaintiff's allegations, including retaliation, the issuance of a false misconduct (based on the knife allegedly being planted in Plaintiff's duffle bag), and conspiracy. (*See* docket no. 24-3 at 7, 27.) The only substantial difference between the two grievances is that Defendant Flaugher is only named in Grievance No. SRF-2013-06-1010-28b.

The undisputed facts show that Plaintiff failed to properly exhaust Grievance No. SRF-2013-06-1010-28b. Specifically, Plaintiff failed to properly file a Step II appeal. His Step I

6

grievance was rejected as being "vague," but the MDOC official response also informed Plaintiff that "[y]ou will be allowed an administrative hearing on the matter pursuant to R 799.3315 and PD 03.03.105 where you will be able to state your argument about not being responsible for the weapon found in your area of control."  (Docket no. 24-3 at 28.)  Thus, it appears MDOC Officials were willing to address Plaintiff's allegations on the merits even though they also believed that the grievance was "vague."

This particular grievance was, however, also rejected at Step II for the stated reason that the Step II appeal was untimely, because Plaintiff wrote in the area of the appeal form reserved for the respondent, and because Plaintiff "demeaned the character of staff on appeal." (*Id.* at 25–26.)  The undersigned finds that the Step II appeal was not untimely,[2] but that Plaintiff did not properly complete the form because he wrote in the section designated for the MDOC respondent (*see id.* at 25), and that Plaintiff did demean the character of staff on appeal by writing that "[t]he grievance coordinator was abundant with in-competence." (*Id*.)  MDOC officials were therefore correct in rejecting Plaintiff's Step II appeal; and the undersigned therefore finds that Plaintiff did not exhaust his remedies as to Grievance No. SRF-2013-06-1010-28b.

As stated above, Defendant Flaugher is identified only in Grievance No. SRF-2013-06-1010-28b, and that grievance was not properly exhausted.  MDOC policy requires that a prisoner name all individuals involved in order to properly exhaust administrative remedies as to that person; all claims against Defendant Flaugher should therefore be dismissed.  *See* MDOC Policy Directive 03.02.130(R).

---

[2] The Step II Response indicates that Plaintiff's Step II appeal was due on July 26, and that Plaintiff mailed it on July 26. (Docket no. 24-3 at 26.)  MDOC policy provides that "[g]rievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant." MDOC Policy Directive 03.02.130(S).  The Step II appeal was therefore not untimely.

Plaintiff's allegations against Defendants Thomas, VanSumeran, Hoffman, Winn, and Ricumstrict are addressed in Grievance No. SRF-2013-08-1251-24z. (*See* docket no. 24-3 at 9.) Defendants contend that Plaintiff did not properly exhaust his administrative remedies as to this grievance because his Step III appeal was not submitted within 105 days of the submission of the Step I grievance. (Docket no. 24 at 15; 24-3 at 6.) Defendants concede that there is no explicitly stated policy requiring that all Step III appeals be filed within 105 days of a Step I grievance; however, they argue that "the 105-day period . . . is arrived at by adding together the due dates at each step of the grievance and then accounting for additional days due to extension and mailing time." (Docket no. 24 at 15.)

Even if there is a 105-day maximum time limit between the filing of a Step I grievance and a Step III appeal,[3] the undersigned concludes that Defendants have waived the deadline in this case. Plaintiff filed his Step I grievance on August 1, 2013, and he received a response on August 30, 2013. (Docket no. 24-3 at 9–10.) Plaintiff's Step II appeal was due "within ten business days after receiving the Step I response." MDOC Policy Directive 03.02.130(BB). MDOC officials did not receive Plaintiff's Step II appeal until December 9, 2013, far more than ten days after Plaintiff received the Step I response on August 30, 2013. (Docket no. 24-3 at 7.) Despite the untimeliness[4] of the Step II appeal, MDOC officials considered it on the merits, explaining:

---

[3] The Step III appeal response for Grievance No. SRF-2013-08-1251-24z says the maximum is 105 "calendar days" (docket no. 24-3 at 6); however, MDOC Policy Directive 03.02.130(S), (X), (BB), and (FF) list the Step deadlines in terms of "business days," and Defendants do not make an attempt to reconcile this difference.

[4] The undersigned notes that Plaintiff describes a number of circumstances which allegedly affected his ability to file a timely Step II appeal, and he also presents some proof suggesting that part of the cause of his delay was MDOC officials' failure to timely provide him with the proper Step II appeal form. (Docket no. 25 at 9–11.)

8

> Grievant appeals to Step II, stating that the investigation was insufficient [at Step I]. Grievant maintains he was transferred in retaliation and everyone telling him he was going north confirms this claim as that is where he was sent. Grievant also claims he was set up to be placed in segregation as this was all planned.
>
> The record has been reviewed on appeal.
>
> No evidence supports Grievant's contention [that] he was transferred in retaliation. Grievant needed alternate placement after being found in possession of a weapon and URF needed alternate placement for a prisoner involved in a fight. This makes the transfer between the facilities routine.
>
> No violation of policy or procedure has been shown. The grievance appeal is denied at this step.

(Docket no. 24-3 at 8.) Because MDOC officials considered the Step II appeal on the merits, Defendants cannot now rely on its untimeliness to argue that Plaintiff failed to properly exhaust his administrative remedies. *See, e.g.*, *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (citations omitted) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will [courts].")

Moreover, Defendants have failed to show that Plaintiff's Step III appeal was not timely. The Step II response was sent to Plaintiff on December 12, 2013. (*Id.*) Neither party has produced Plaintiff's Step III appeal form; however, Plaintiff claims that he submitted it "into the mailbox on 12/22/2013." (Docket no. 25 at 12.) This is in compliance with MDOC policy which requires that a Step III appeal be filed "within ten business days after receiving the Step II response." MDOC Policy Directive 03.02.130(FF). According to MDOC policy, "[g]rievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant." MDOC Policy Directive 03.02.130(S). Defendants have produced no evidence to contradict Plaintiff's claim that he submitted the Step III appeal on December 22. While they have

9

produced their Step III response, which shows that they *received* Plaintiff's Step III appeal on December 30, this fact does not contradict Plaintiff's claim that he sent it on December 22.

For these reasons, the undersigned finds that Defendants have not shown that Plaintiff failed to exhaust his administrative remedies concerning Grievance No. SRF-2013-08-1251-24z. Defendants Motion for Summary Judgment should be denied as to Defendants Thomas, VanSumeran, Winn, and Ricumstrict.[5]

### 2.  *Defendant Freed*

Defendants argue that all claims against Defendant Freed should be summarily dismissed because Plaintiff does not name Defendant Freed in either of the two grievances at issue in this case. (Docket no. 24 at 14.) Plaintiff argues that his claims against Defendant Freed are not grievable, and Plaintiff is correct.

In his Complaint, Plaintiff states that "the actions . . . of Defendant Scotty Freed of intentionally refusing to obtain critical evidence that would have exonerated Plaintiff" of the allegedly false misconduct written by Defendant Hoffman "violated [the] 14th Amendment and equal protection (due process as well), and 42 U.S.C. §§ 1985, 1986 for participating in the retaliation conspiracy and failing to report/intervene the conspiracy, which ultimately led to Plaintiff's guilty finding on Hoffman's false misconduct." (Docket no. 1 at 17.) Plaintiff is clearly referring to actions taken by Defendant Freed while Defendant Freed was acting as a Hearings Investigator on Plaintiff's weapons misconduct ticket. MDOC Policy Directive 03.02.130(F)(2) provides that "issues directly related to the hearing process" are not grievable. Defendant Freed is therefore not entitled to summary judgment on the claims against him based on Plaintiff's failure to exhaust his administrative remedies.

Defendants also argue that the claims asserted against Defendant Freed in his official

---

[5] Defendant Hoffman has not been served, and did not join in the Motion for Summary Judgment.

capacity should be dismissed because state officials are immune from suit under the Eleventh Amendment to the United States Constitution. (Docket no. 24 at 17.) The undersigned agrees.

"The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 464 (1945)). "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief." *Doe v. Wigginton*, 21 F.3d 733, 736 (6th Cir. 1994) (citation omitted).[6] Here, is it clear that Plaintiff seeks only retroactive relief against Defendant Freed. Plaintiff seeks monetary damages for the suffering he has endured due to the transfer to URF, an injunction to have the past misconduct conviction removed from his record, and a declaratory judgment that Defendant Freed violated the law during the misconduct hearing. Plaintiff's official capacity claims against Defendant Freed should therefore be dismissed.

### C. Conclusion

For the above-stated reasons, the undersigned recommends that Defendants' Motion for Summary Judgment [24] be **GRANTED IN PART and DENIED IN PART**. The Motion should be granted as to all claims against Defendant Flaugher, and as to the official capacity claims against Defendant Freed, but denied as to Plaintiff's individual capacity claims against Defendant Freed, and as to Plaintiff's claims against Defendants Winn, Ricumstrict, Vansurman,

---

[6] Eleventh Amendment immunity also does not apply in cases where "the state has consented to suit," or "where Congress has abrogated the state's immunity." *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999). Plaintiff does not cite any authority suggesting that the State of Michigan has consented to suit under 42 U.S.C. §§ 1983, 1985, or 1986, and the undersigned has found none. *See, e.g., Franklin v. Mich.*, No.16-12699, 2017 WL 2262500, at *4 (E.D. Mich. April 4, 2017), *R&R adopted*, 2017 WL 2242511 (E.D. Mich. May 23, 2017). And, as Defendants point out, the United States Supreme Court has held that Congress did not intend to abrogate "the traditional sovereign immunity of the States" in passing 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979) *abrogated on other grounds by Hafer v. Melo*, 502 U.S. 21, 27 (1991); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989).

and Thomas.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Eastern District of Michigan Local Rule 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 27, 2017            s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Plaintiff and counsel of record and on Plaintiff Mark White on this date.

Dated:  June 27, 2017            s/ Lisa C. Bartlett
                                 Case Manager