**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**D'ANDRE M. ALEXANDER**

    **Plaintiff,**                                                **Case No. 16-cv-12069**

    **v.**                                                          **District Judge Terrence G. Berg**

**ANN HOFFMAN, et al.,**                **Magistrate Judge Mona K. Majzoub**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff D'Andre Alexander, who at all times relevant to the complaint was incarcerated at Saginaw Correctional Facility in the custody of the Michigan Department of Corrections ("MDOC"), filed this *pro se* civil rights action on June 6, 2016. (Docket no. 1.) Defendants are employees of the MDOC: Ann Hoffman, an Assistant Resident Unit Specialist; Scotty Freed, a Hearings Investigator; O'Bell T. Winn, a Deputy Warden; Donald Ricumstrict, also a Deputy Warden; and Shannon Flaugher, Randall VanSumeren, and Delardon Thomas, all Correctional Officers. Plaintiff alleges that Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution by conspiring to plant a knife in his cell, which resulted in a misconduct ticket and ultimately a transfer to the Chippewa Correctional Facility in Kincheloe, Michigan. (Docket no. 1, pp. 8-9.)

Before the Court is Defendants' motion for summary judgment. (Docket no. 59.) This matter has been referred to the undersigned for all pretrial proceedings. (Docket no. 9.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, the undersigned recommends that Defendants' motion for summary judgment (docket no. 59) be **GRANTED IN PART** and **DENIED IN PART**. Summary judgment should be granted with respect to all claims except Plaintiff's allegation that Defendant Hoffman falsified a misconduct report in retaliation for prior grievances.

**II.    REPORT**

   **A.     Background**

Plaintiff's complaint describes a series of events that allegedly unfolded while he was incarcerated at Saginaw Correctional Facility ("SRF") from April through June of 2013. (Docket no. 1.)  On April 7, 2013, Plaintiff filed a grievance against a non-party corrections officer, which Defendant Hoffman was assigned to review. (*Id.* at 20.)  Plaintiff contends that during the review process, Defendant Hoffman threatened to plant a knife in his cell. (Docket no. 1, p. 6.)  Plaintiff further alleges that on June 7, 2013, Defendant Hoffman approached him as he was leaving breakfast and stated, "[E]njoy your last meal because you'll be saying bye bye to SRF real soon.  I'm going to have [Defendant] Winn get you out of here." (*Id.* at 8.)  On the same date, Defendant Hoffman wrote a misconduct stating that Plaintiff "had a 5 ½ inch piece of metal sharpened to a point on one end with a handle made out of a towel/washcloth . . . in [his] duffle bag." (*Id.* at 25.)  After a hearing, Plaintiff was found guilty and sentenced to thirty days in segregation.  (*Id.* at 26.)

Plaintiff asserts that in June of 2013, Defendants Winn and Ricumstrict threatened that he would be transferred to Chippewa Correctional Facility ("URF"). (*Id.* at 9.)  On June 27, 2013, Plaintiff was in fact transferred to URF.  (Docket no. 59-2.)

Plaintiff filed the instant complaint on June 6, 2016, alleging that Defendants retaliated

against him for filing grievances in violation of the First Amendment. (*Id.* at 5.)

### B. Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 59.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most

favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C. Analysis**

Defendants move for summary judgment on the basis that Plaintiff fails to establish the elements of a First Amendment retaliation claim. (Docket no. 59, pp. 10-24.) In the alternative, Defendants contend that they are entitled to qualified immunity. (*Id.* at 24-26.) Plaintiff objects to the relief sought by Defendants. (Docket no. 63.) In support, Plaintiff filed an affidavit in which he testifies that Defendants conspired to retaliate against him for filing grievances by planting a knife in his cell and by transferring him from SRF to URF. (*Id.*)

*1. Retaliation*

a. <u>Weapon Possession Misconduct</u>

Defendants contend that Plaintiff fails to establish a First Amendment retaliation claim. Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* (citations omitted).

For the purposes of this motion, Defendants concede that Plaintiff's prior grievances qualify as protected conduct. (Docket no. 59, p. 11.) However, Defendants dispute Plaintiff's assertion that a knife was planted in his cell. (*Id.* at 14.) In addition, Defendants contend that

4

neither Plaintiff's misconduct ticket nor his subsequent transfer to Chippewa Correctional Facility ("URF") was motivated by Plaintiff's grievances. (*Id*. at 13-24.)

Plaintiff contends that genuine issues of material fact exist regarding the circumstances of his misconduct ticket and transfer to URF. (Docket no. 63.) A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials on the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, and other material. Fed. R. Civ. P. 56(c)(1).

Plaintiff filed an affidavit containing his testimony in support of his retaliation claim. (Docket no. 63.) Plaintiff states that on April 24, 2013, Defendant Hoffman, who was assigned to review a grievance that Plaintiff filed, threatened that if Plaintiff "ke[pt] it up . . . [a] knife [would] get put on [him]." (*Id.* at 6, 11.) Plaintiff testifies that on the morning of June 7, 2013, Defendant Hoffman told him to "enjoy [his] last meal because [he would] be saying bye-bye to SRF real soon." (*Id.* at 11.) Plaintiff further asserts that on that day, "Defendant Hoffman wrote a false retaliatory weapons charge on Plaintiff . . ., which caused him to be sent to segregation and punished." (*Id.*) According to Plaintiff, Defendant Hoffman "lied" regarding the "claim[] [that] she found a weapon in Plaintiff's locker." (*Id.*)

An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters asserted. Fed. R. Civ. P. 56(c)(4). Plaintiff's affidavit contains certain "conclusory facts" as to which he lacks personal knowledge. For example, Plaintiff states that Defendant Hoffman wrote a "false weapon misconduct on Plaintiff . . . as a punishment [for prior grievances]." (Docket no. 63, p. 5.) Such conclusory assertions cannot create a genuine issue of

5

material fact. *See Sigmon v. Appalachian Coal Properties, Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010) (conclusory assertion that "a sales agreement was reached" left a "dearth of specifics" and was "insufficient to create a genuine issue of material fact as to the existence of an oral sales agreement"). However, Plaintiff's testimony that Defendant Hoffman "lied" about finding a weapon in his cell can be fairly construed as a denial by Plaintiff that he possessed such a weapon. And this testimony, which is supported by Plaintiff's personal knowledge, is circumstantial evidence that the weapon charge was falsified. In addition, Plaintiff is competent to testify regarding Defendant Hoffman's alleged threat to plant a knife in Plaintiff's cell in response to his prior grievances.

In addition to his affidavit, Plaintiff refers to a copy of the grievance that he filed on April 7, 2013 alleging that a non-party corrections officer threatened to "set him up," either by himself or with the assistance of a co-worker. (Docket no. 1, p. 20.) Plaintiff also refers to the audio recording of a call to his sister on June 6, 2013, in which he stated that corrections officers were "threatening" that he was "not going to be [at SRF] for long." (Docket no. 59-5.)

Accordingly, Plaintiff has introduced evidence that: (1) Defendant Hoffman threatened that he would be transferred in retaliation for filing grievances, (2) Plaintiff was concerned that officers would actually carry out that threat, and (3) Plaintiff did not possess a knife on the date of the misconduct ticket. This evidence, whether or not it is found to be persuasive, creates a genuine issue of material fact. A jury that finds Plaintiff to be credible could reasonably conclude that Defendant Hoffman retaliated against him for filing grievances by falsely claiming to find a knife in his cell.

Based on the above analysis, the Court should deny Defendants' motion for summary judgment as it relates to Defendant Hoffman.

b. Transfer to URF

Plaintiff further asserts that Defendants retaliated against him by transferring him from SRF to URF. (Docket no. 63, p. 14.) Defendants contend that Plaintiff was transferred "through normal and lawful MDOC processes to make room for other prisoners." (Docket no. 59, p. 16.) As stated in the transfer order, URF was to "send a prisoner to separate fighters," and SRF would send Plaintiff, who "require[d] alternate placement due to find on 029 [i.e., the weapon-possession misconduct]." (Docket no. 59-2.) Defendants submit that "the author [of the transfer order] is not a named Defendant in this suit." (Docket no. 59, p. 16.)

On its face, the transfer order is supported by ordinary prison-management objectives. Plaintiff offers no specific evidence that he was transferred because of prior grievances, nor is there any evidence that the author had reason to believe that Plaintiff's misconduct citation was falsified. Moreover, Plaintiff fails to establish that any Defendant played a role in the transfer. Accordingly, the Court should grant Defendants' motion for summary judgement as it pertains to Plaintiff's retaliatory transfer claim.

2. *Conspiracy*

Plaintiff contends that Defendants Flaugher, Freed, Thomas, Ricumstrict, Winn, and VanSumeren conspired with Defendant Hoffman to deprive him of his First Amendment rights. (Docket no. 1; docket no. 59-6.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To establish a conspiracy under § 1983, a plaintiff must show that (1) a "single plan" existed, (2) defendants "shared in the general conspiratorial objective" to deprive the plaintiff of his constitutional rights, and (3) "an

7

overt act was committed in furtherance of the conspiracy that caused [the plaintiff's] injury." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). The overt-act element requires only that at least one of the alleged conspirators committed an overt act or omission in furtherance of the conspiracy. *Id.* Conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

### a. Defendant Flaugher

Plaintiff contends that Defendant Flaugher reacted negatively to being listed as a witness on a grievance that Plaintiff filed against Defendant Hoffman. (Docket no. 63, p. 12.) According to Plaintiff, this alleged hostility, combined with the fact that Defendant Flaugher was present during the June 7, 2013 cell search that resulted in the weapon misconduct citation, creates "a question of material fact as to whether Defendant Flaugher shared the same motive as Hoffman." (*Id.*) However, these allegations fail to demonstrate that Defendant Flaugher shared the "single plan" and "conspiratorial objective" to plant a weapon in Plaintiff's cell in retaliation for prior grievances. Accordingly, Defendants' motion for summary judgment should be granted as to Defendant Flaugher.

### b. Defendant Freed

Plaintiff asserts that during the investigation ensuing from the June 7, 2013 misconduct ticket, Defendant Freed referred to Plaintiff as a "grievance writer" and indicated that he would be found guilty of the weapon-possession charge. (Docket no. 63, p. 13.) Plaintiff also contends that Defendant Freed failed to obtain a copy of the phone call that Plaintiff made to his sister on June 6, 2013, and that this failure contributed to Plaintiff being found guilty. (*Id.*)

These allegations do not establish that Defendant Freed shared the "single plan" and

8

"conspiratorial objective" to plant a weapon in Plaintiff's cell in retaliation for prior grievances. Plaintiff offers no evidence that Defendant Freed had reason to believe that the June 7, 2013 misconduct citation was fraudulent. Moreover, Defendant Freed's determination not to obtain the recording of the call between Plaintiff and his sister does not suggest any intent to deprive Plaintiff of a fair misconduct hearing. That call is referenced in the misconduct hearing report, and its existence is not doubted. (Docket no. 63, p. 24.) Accordingly, Defendants' motion for summary judgment should be granted with respect to Defendant Freed.

### c. Defendant VanSumeren

Plaintiff contends that on June 6, 2017, Defendant VanSumeren told Plaintiff that he was "taking a trip to 600" (i.e., the segregation unit at SRF) because VanSumeren "d[idn't] like" Plaintiff and "never did." (Docket no. 59-6, p. 5.) Plaintiff "asserts that this comment was made because of the grievances filed on [Defendant] Hoffman," but offers no particular evidence in support of that assertion. (Docket no. 63, p. 10.)

These allegations fail to establish that Defendant VanSumeren shared the "single plan" and "conspiratorial objective" to plant a weapon in Plaintiff's cell in retaliation for prior grievances. Accordingly, Defendants' motion for summary judgment should be granted as to Defendant VanSumeren.

### d. Defendant Thomas

Plaintiff asserts that Defendant Thomas overheard the alleged comment by Defendant Vansumeren regarding "taking a trip to 600," and that Defendant Thomas "could have intervened" but "didn't want any part of the situation." (Docket no. 59-6, p. 19.)

This allegation fails to demonstrate that Defendant Thomas shared the "single plan" and "conspiratorial objective" to plant a weapon in Plaintiff's cell in retaliation for prior grievances.

9

Accordingly, Defendants' motion for summary judgment should be granted as to Defendant Thomas.

e. Defendant Ricumstrict

Plaintiff alleges that Defendant Ricumstrict "influenc[ed] a retaliatory transfer" of Plaintiff from SRF to URF. (Docket no. 63, p. 10.) In support, Plaintiff asserts that Defendant Ricumstrict "warned Plaintiff about the 'SRF' treatment, which involved transferring prisoners who filed grievances and didn't sign off," and told Plaintiff, "[D]on't be surprised when we get you out of here." (*Id.*)

These allegations fail to establish that Defendant Ricumstrict shared the "single plan" and "conspiratorial objective" to plant a weapon in Plaintiff's cell in retaliation for prior grievances. Even if Ricumstrict expressed a desire to transfer Plaintiff, there is no evidence to show that Ricumstrict played a role in the allegedly fraudulent weapons misconduct citation. Accordingly, Defendants' motion for summary judgment should be granted as to Defendant Ricumstrict.

f. Defendant Winn

Plaintiff contends that on June 19 or 20 of 2013, Defendant Winn approached his cell and stated that Plaintiff "brought this s - - t on [him]self" and that he was "getting sent up north far away." (Docket no. 63, p. 14.)

Again, this evidence fails to establish that Defendant Winn played a role in the decision to transfer Plaintiff to URF. Moreover, nothing suggests that Defendant Winn had reason to question the legitimacy of Plaintiff's weapon-possession citation. Under these circumstances, the allegedly expressed desire to see Plaintiff transferred does not establish that Defendant Winn shared the "single plan" and "conspiratorial objective" to plant a weapon in Plaintiff's cell in retaliation for prior grievances. Accordingly, Defendants' motion for summary judgment should

10

be granted as to Defendant Winn.

### 3. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. (Docket no. 59, p. 24.) In support, Defendants cite voluminous caselaw regarding qualified immunity, but offer no analysis regarding the doctrine's application to this case. For the reasons set forth below, Defendant Hoffman is not entitled to qualified immunity against Plaintiff's allegation that she falsified a misconduct report in retaliation for prior grievances.

The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Whether qualified immunity can be invoked turns on the "objective legal reasonableness" of the official's acts. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). In turn, reasonableness of official action must be "assessed in light of the legal rules that were clearly established at the time [the action] was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This requirement—that an official loses qualified immunity only for violating clearly established law—protects officials accused of violating "extremely abstract rights." *Id.* at 639. It is not necessary that "the very action in question has previously been held unlawful." *Id.* at 640. An officer might lose qualified immunity even if there is no reported case "directly on point." *Ashcroft*, 563 U.S. at 741. But "in the light of pre-existing law," the unlawfulness of the officer's conduct "must be apparent." *Anderson*, 483 U.S. at 640.

Plaintiff's allegation that Defendant Hoffman falsified a misconduct report in retaliation for prior grievances would, if proven, amount to a violation of a "clearly established" legal rule. The Sixth Circuit has "repeatedly recognized that if a prison officer 'retaliated against [a prisoner] for filing grievances,' the 'alleged conduct also comprises a violation of clearly

11

established constitutional law.'" *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (quoting *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)).

### D. Conclusion

For the above-stated reasons, the undersigned recommends that Defendants' motion for summary judgment (docket no. 59) be **GRANTED IN PART** and **DENIED IN PART**. Summary judgment should be granted with respect to all claims except Plaintiff's allegation that Defendant Hoffman falsified a misconduct report in retaliation for prior grievances.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Eastern District of Michigan Local Rule 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must

specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: September 27, 2018        s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  September 27, 2018        s/ Leanne Hosking
                                  Case Manager

13