UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **D'ANDRE M. ALEXANDER**, | 4:16-cv-12069 |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | **ORDER DENYING MOTION** |
| **ANN HOFFMAN, et al.** | **FOR A NEW TRIAL OR TO** |
| Defendants. | **AMEND JUDGMENT** |

Plaintiff D'Andre Alexander, a prisoner of the Michigan Department of Corrections ("MDOC"), moves for a new trial, or to amend judgment, after the jury found against him following a four-day jury trial that concluded on September 27, 2019. Alexander had alleged that several MDOC employees tried to frame him by falsely claiming to have found a knife hidden among his person effects and completing a major-misconduct report to that effect. Although Plaintiff requested that evidence be gathered to support his version of events and mount a defense to the charge, that evidence was never collected. An Administrative Hearing Officer later found Plaintiff guilty of possessing a weapon in prison. He was subsequently placed in administrative segregation and transferred from the Saginaw Correctional Facility to a prison in Michigan's Upper Peninsula.

Plaintiff brought two claims to trial. First, that the Hearing

1

Investigator, Scott Freed, violated his Fourteenth Amendment right to procedural due process by refusing to gather specific evidence Plaintiff believed would have supported his defense against the major-misconduct charge; and second, that Ann Hoffman, an Assistant Resident Unit Specialist, retaliated against Plaintiff for exercising his First Amendment right to file grievances against her by falsifying the misconduct report.

At the close of the proofs, Defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court granted that motion as to Freed but denied it as to Hoffman. ECF No. 105. Accordingly, only Plaintiff's First Amendment retaliation claim against Hoffman went to the jury, which returned a verdict in her favor. This case is now before the Court on Plaintiff's Rule 59 motion for a new trial or to amend the judgment, ECF No. 117, as well as a motion for limited discovery for the purposes of identifying new evidence, ECF No. 118. *See* Fed. R. Civ. P. 59(e). The Court will deny both pending motions.

## BACKGROUND

This case arose from events that occurred at the Saginaw Correctional Facility, where Plaintiff was incarcerated in 2013. The relevant facts are set forth in more detail in previous orders. *See, e.g.*, ECF No. 72 (Mar. 25, 2019 Order Adopting in Part, Modifying in Part R. & R.); ECF No. 65 (Sep. 27, 2018 R. & R.); ECF No. 44 (Jan. 23, 2018 R.

& R.). Briefly, Plaintiff claimed that Hoffman conspired with other previously dismissed Defendants to falsify a major-misconduct report by claiming—disingenuously—to have discovered a knife inside a duffel bag in Plaintiff's cell. ECF No. 72, PageID.643–46. Plaintiff asserted that these actions were retaliation by Hoffman against Plaintiff for his previous filing of grievances against her. ECF No. 105, PageID.783.

At trial, Plaintiff's sole remaining claim against Hoffman was for First Amendment retaliation. *See id.* His claims alleging conspiracy and retaliatory transfer had been dismissed on summary judgment. *See* ECF Nos. 64, 72. The other claim that remained for trial was Plaintiff's claim against Freed for violation of his Fourteenth Amendment due process rights. Freed, Plaintiff alleged, had refused to gather evidence Plaintiff requested to support his defense during the hearing on his major-misconduct charge. Specifically, Plaintiff had asked Freed to procure the recording of Plaintiff's phone call with his sister, during which he expressed concern that MDOC officers would set him up. ECF No. 105, PageID.786. He also asked that Freed gather witness statements. ECF No. 105, PageID.786. According to the major-misconduct hearing report, that evidence was never presented to the Hearing Officer, who ultimately found Plaintiff guilty of misconduct. Pl.'s Ex. 8; ECF No. 105, PageID.786. The hearing report described Plaintiff's claim that he had notified his sister of a potential set-up by MDOC employees the night before the knife was found as "a manufactured argument created by prisoner Plaintiff to

undermine the investigative and hearing process." Pl.'s Ex. 8. Concerning Plaintiff's request that Freed gather witness statements, the hearing report stated only that those statements "were not obtained." The Hearing Officer, Wayne Groat, nonetheless described them as "immaterial, irrelevant, or unduly repetitious." Pl.'s Ex. 8.

Voir dire began and concluded on September 24, 2019 and a jury was impaneled that same day. Trial began on September 25 and concluded on September 27, 2019. After the parties finished presenting their evidence and arguments, Defendants moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. The Court granted that motion as to Freed, finding that "no evidence was presented at trial that would provide a reasonable jury with a legally sufficient evidentiary basis to find that Plaintiff was subjected to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life," a required element of his Fourteenth Amendment due process claim. ECF No. 105, PageID.780–81 (Court's Sep. 27, 2019 Order). The Court denied the Rule 50 motion as to Hoffman. *See id.* The jury subsequently returned a verdict in favor of Hoffman on the First Amendment retaliation claim.

Plaintiff gave oral notice of his intent to appeal both judgments in open Court on September 27, 2019. *See* Sep. 27, 2019 Dkt. Entry. The Clerk of Court filed a corresponding notice of appeal on October 7, 2019. ECF No. 113 (Notice of Appeal). But Plaintiff later changed his mind and

elected to file a post-judgment motion in the district court pursuant to Rule 59. ECF Nos. 117, 118. He has subsequently filed documents with the Court that he describes as supplemental evidence supporting the post-judgment motion. *See* ECF Nos. 121, 122. On March 5, 2020, the Sixth Circuit issued an order informing Plaintiff that it would not hold his appeal in abeyance while the district court rules on his post-judgment motion. ECF No. 124. Unless Plaintiff pays the appellate filing fee to the district court or moves for leave to proceed in forma pauperis, his appeal may be dismissed. ECF No. 124.

## LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure permits district courts to grant a new trial or to alter, amend, or vacate a prior judgment on motion by a party filed within 28 days of the entry of judgment. Fed. R. Civ. P. 59(b), (e). Plaintiff specifically requests a new trial pursuant to Rule 59(a), or amendment of the existing judgment under Rule 59(e). ECF No. 117, PageID.955 (Plaintiff's Br.). The fact that Plaintiff also filed what he describes as additional newly discovered evidence more than 28 days after judgment was entered suggests he intended also to style his motion as one for relief from a final judgment under Rule 60(b)(2) based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Accordingly, the Court will construe the motion as one seeking a new trial under Rule 59(a), as well as relief from

judgment under Rule 59(e) and Rule 60(b)(2). *See* Fed R. Civ. P. 59(b), (e); Fed. R. Civ. P. 60(b)(2).

After a jury trial, district courts may grant a new trial on all or some of the claims pursuant to Rule 59(a) "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Sixth Circuit has interpreted this language to mean that courts should grant a party's Rule 59 motion for a new trial when the jury has reached "a seriously erroneous result" characterized by: (1) the verdict being against the weight of the evidence; (2) excessive damages; or (3) the trial being unfair to the moving party, i.e. influenced by prejudice or bias. *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1046 (6th Cir. 1996); Fed. R. Civ. P. 59(b).

In contrast, courts may grant a Rule 59(e) motion to alter or amend a judgment to "(1) correct a clear error of law, (2) account for newly discovered evidence, (3) accommodate an intervening change in the controlling law, or (4) otherwise prevent manifest injustice." *Moore v. Coffee Cty., Tenn.*, 402 F. App'x 107, 108 (6th Cir. 2010) (citation omitted). For purposes of the Federal Rules, "newly discovered evidence" is evidence that was previously unavailable. *Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014) (citing *GenCorp, Inc. v. AM. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

Rule 59(e) motions "cannot be used to present new arguments that could have been raised prior to judgment." *Howard v. United States*, 533

6

F.3d 472, 475 (6th Cir. 2008) (citations omitted). Similarly, Rule 59(e) is not a procedural vehicle for parties to relitigate issues previously considered by the district court. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Additionally, district courts have a great deal of discretion in deciding whether to grant a Rule 59 motion. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

Rule 60(b) provides another mechanism for parties to seek relief from a final judgment. Under that rule, relief may be granted only on enumerated grounds, one of which is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

## DISCUSSION

Although Plaintiff's Rule 59 motion was docketed on October 29, 2019, more than the allowed 28 days after judgment was entered in favor of Defendants, the Court will construe the motion as timely filed because Plaintiff timely submitted the motion to prison authorities for mailing. *Browning v. United States*, No. 2:07–20427, 2013 WL 1843381, at *1 (E.D. Mich. May 1, 2013) ("Although the Rule 59(e) motion was not timely filed, the court has considered the Rule 59(e) motion on the merits because of Browning's claim that he timely filed his motion to this court."); *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997) (deeming prisoner's habeas motion filed when given to prison authorities for mailing). MDOC

7

records show that Plaintiff indeed submitted his motion to prison staff on October 22, 2019, in advance of the October 25, 2019 deadline. *See* ECF No. 120, PageID.989. The Rule 59 motion is therefore timely.

In his motion for a new trial or amendment of the judgment, Plaintiff asserts three overarching bases for his requested post-judgment relief: (1) abuse of discretion by the trial court; (2) newly discovered evidence; and (3) verdict not supported by the weight of the evidence. ECF No. 117, PageID.951. The Court will address these issues in turn but ultimately is not persuaded that any of the arguments raised warrant a new trial or amendment of the existing judgments in favor of Defendants.

## I.   Abuse of discretion by the trial court

Plaintiff takes issue with a number of decisions and perceived omissions by the trial court, among them the Court's finding that his proposed Exhibits 13 and 14 were inadmissible, its decision to allow Juror No. 2 to serve on the jury, the decision to designate Exhibit 24 as Plaintiff's (rather than Defendants') exhibit, failure to sanction alleged misconduct by defense counsel, limitations placed on what Plaintiff could tell the jury about Exhibit 24, and the decision to enter Rule 50 judgment in favor of Freed. None of these decisions by the trial court warrant a new trial under Rule 59(a) or revisiting the judgment under Rules 59(e) or 60.

### A. Inadmissibility of Exhibits 13 and 14, and failure to rule on "offer of proof"

First, Plaintiff asserts that the Court improperly excluded his proposed Exhibits 13 and 14 from evidence and failed to rule on an offer of proof he made concerning those exhibits pursuant to Rule 103 of the Federal Rules of Evidence. ECF No. 117, PageID.956. The inclusion or exclusion of evidence is left to the sound discretion of the trial court and is reviewed by the appellate court for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997). Even if the decision of the district court is an abuse of discretion, it will not be grounds for reversal unless the evidentiary ruling results in actual prejudice. *Shabazz v. Martin*, No. 00-73005, 2007 WL 2782054, *2 (E.D. Mich. Sept. 24, 2007).

Here, the Court had ruled before trial that evidence relevant only to Plaintiff's previously dismissed claims would be excluded on relevance grounds unless it was introduced to help establish his alleged damages. ECF No. 104 (Sep. 24, 2019 Order on Mots. in Limine). Consistent with its order on the motions in limine, the Court made specific evidentiary rulings at trial finding Exhibits 13 and 14 inadmissible for the purposes sought by Plaintiff. Plaintiff has not presented any information that indicates the Court's evidentiary rulings were in error, that he was prejudiced, or that he is otherwise entitled to a new trial or relief from judgment on this basis.

Plaintiff's proposed Exhibit 13 comprises two versions of an MDOC

transfer order——one dated June 26, 2013 and the other March 15, 2018—facilitating his transfer from Saginaw Correctional Facility to Chippewa Correctional Facility, in the Upper Peninsula. *See* ECF No. 107 (Court's Ex. List). The two transfer documents have different dates. And while the 2013 version of the transfer order provides the redacted name of the individual who prepared the order, and a signature by the individual who signed it, the 2018 version omits this information. Similarly, proposed Exhibit 14 includes two almost identical copies of a security classification screen the MDOC completed concerning Plaintiff in 2013. Both security screens provide a "date entered" of June 25, 2013 but also list another "date" of March 15, 2018 (possibly the date the MDOC produced the documents). One version of the document provides the name of the individual who conducted the screen, while the other redacts that information. The security screen copies also apparently incorrectly identify Plaintiff's location as Gus Harrison Correctional.

According to Plaintiff, Exhibits 13 and 14 should have been admitted at trial because the fact that different versions of the transfer order and security classification screen exist indicates the documents "were altered . . . to cover up who was responsible for the transfer from SRF to URF, and to shield the circumstances contributing to this transfer." ECF No. 117, PageID.956. He further asserts that, because Exhibits 13 and 14 both include two versions of one document, the exhibits indicate "consciousness of guilt" on the part of Hoffman that she

10

engineered Plaintiff's transfer to the Upper Peninsula to punish him for filing grievances. ECF No. 117, PageID.957. Essentially, Plaintiff's position is that if the major-misconduct ticket was valid there would have been no need to "alter" either the transfer order or the security classification screen. ECF No. 117, PageID.957.

The Court previously considered these arguments and found Exhibits 13 and 14 inadmissible. *See Engler*, 146 F.3d at 374 (explaining that Rule 59(e) is not a procedural vehicle for parties to relitigate issues previously considered by the district court). In its Order deciding both parties' motions in limine before trial, the Court ruled that evidence pertaining only to Plaintiff's previously dismissed claims was not relevant and would be excluded to avoid undue delay at trial. ECF No. 104, PageID.776–77 (Sep. 24, 2019 Order). Among the claims dismissed before trial were Plaintiff's claims alleging conspiracy and retaliatory transfer to the Upper Peninsula correctional facility. *See* ECF No. 64 (Sep. 27, 2018 R. & R.); ECF No. 72 (Mar. 25, 2019 Order Adopting in Part and Modifying in Part Sep. 27, 2018 R. & R.). Evidence relevant to Plaintiff's transfer, the Court ruled, would be considered relevant and admissible only "to the extent it is relevant to proving his alleged damages." ECF No. 104, PageID.777.

From the bench during trial, the Court again ruled that Plaintiff's proposed Exhibit 13—comprising the transfer orders—was relevant to damages only to the extent that certain educational opportunities

available at Saginaw Correctional Facility were not available at the Upper Peninsula facility. Accordingly, Plaintiff was instructed that he would be permitted to use the transfer orders only to establish his damages. Although the Court acknowledged Plaintiff could attempt to admit Exhibit 13 as impeachment evidence, it explained he would only be allowed to do so if the witness he showed the documents to expressed familiarity with them. When Plaintiff showed Exhibit 13 to Hoffman during her testimony, she did not express familiarity with the transfer orders. Exhibit 13 was therefore never admitted at trial. *See* Fed. R. Evid. 602 (prohibiting introduction of a document through a witness with no personal knowledge of the documents or its contents).

Concerning Exhibit 14, Plaintiff argued at trial that alleged discrepancies between the two versions of the 2013 security classification showed the documents were "clearly altered" and indicative of "corruption" and a "clean-up attempt." Again, Plaintiff's civil conspiracy and retaliatory transfer claims were dismissed on summary judgment. *See* ECF Nos. 64, 72. Nonetheless, the Court ruled that Plaintiff could attempt to use his proposed Exhibit 14 as impeachment evidence if the witness he showed that exhibit to demonstrated familiarity with it. *See* Fed. R. Evid. 602. But Plaintiff did not successfully introduce the exhibit as impeachment material.

The Court's ruling at trial that neither Exhibit 13 nor Exhibit 14 could properly be admitted into evidence was consistent with its earlier

decision on the motions in limine. Plaintiff has not convinced the Court that its decision to exclude Exhibits 13 and 14 involved a clear error of law, or that he is otherwise entitled to a new trial or relief from judgment because of the Court's decision to exclude those exhibits from evidence.

Plaintiff further contends that the Court failed to rule on his Rule 103 offer of proof in support of admitting Exhibits 13 and 14. "This erroneous omission," he asserts, "left a question of relevancy unresolved before the closing of evidence." ECF No. 117, PageID.956. But Rule 103 simply provides a mechanism for a party objecting to a trial court's evidentiary ruling to preserve that objection for appeal. Fed. R. Civ. P. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."). Here, the Court thoroughly reviewed Plaintiff's proposed Exhibits 13 and 14. The substance of those exhibits was plain to the Court upon its review of those documents, and it deemed them not relevant. Plaintiff's objection to the Court's decision not to admit Exhibits 13 and 14 at trial is, however, preserved for appeal.

## B. Failure to strike Juror No. 2 for cause

Next, Plaintiff takes issue with the Court's decision not to strike Juror No. 2 for cause because of emotional hardship she mentioned during voir dire, or to later excuse her for—Plaintiff contends—

"snoozing" during trial. The Court finds no evidence of partiality that would have justified striking Juror No. 2 for cause during voir dire. On the issue of inattention, Plaintiff has not shown that Juror No. 2, once seated, slept through any critical part of the trial proceedings (or, in fact, that she slept at all). Plaintiff is not entitled to a new trial or alteration of the judgment on the basis of juror partiality or misconduct.

A juror should be excused for cause only where her responses to voir dire questioning indicate she will not be an impartial trier of fact; either because the juror is incapable of deciding the case solely on the evidence before her, or because she is unwilling to do so. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "Jurors are presumed to be impartial." *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 604 (6th Cir. 2019). That presumption can be overcome only if the moving party demonstrates grounds for "actual bias." *Id. See United States ex rel. Stickler v. Tehan*, 365 F.2d 199, 201 (6th Cir. 1966) (explaining that party challenging a jury trial as partial has the burden of persuasion). Unless the challenger "shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside, and it will not be error for the court to refuse to do so." *Reynolds v. United States*, 98 U.S. 145, 157 (1878).

Juror No. 2's voir dire responses were not indicative of any inability or unwillingness to be impartial. She explained that she had lost her husband seven months prior and that at the time of voir dire she was

periodically helping to care for a sister in Virginia struggling with cancer. When asked by the Court whether she thought her caregiving duties "might prevent [her] from serving as a juror," Juror No. 2 stated, "I'm only saying it because I want to be here but I know my mind will be on all the other issues that I've been—I've been coping with these last three—specifically last four months." In response to specific questions about her ability to be an impartial juror, Juror No. 2 answered that she possessed no biases that would make it difficult for her to fairly decide the case. Those questions addressed Juror No. 2's membership in social and political organizations, opinions about crime, prisons, and whether prisoners should be provided fair and equal treatment, among other topics.

Moreover, at no point during voir dire did Plaintiff seek to exclude Juror No. 2 for cause, nor did he exercise any of his peremptory challenges to remove her from the panel. In his motion Plaintiff acknowledges that when he approached the bench during voir dire to ask that Juror No. 2 be excused because of difficulty she might have paying close attention to the trial proceedings, the Court explained that Plaintiff could exercise one of his peremptory challenges to strike her from the jury if he was concerned about her diligence. ECF No. 117, PageID.958–59. But Plaintiff elected not to use any of his peremptory challenges to strike Juror No. 2. ECF No. 117, PageID.959 ("Ultimately, Plaintiff had other prospective jurors he wanted to use a peremptory challenge on, and

decided to use that route."). Nor did Plaintiff attempt to have Juror No. 2 removed for cause at the close of voir dire when given the express opportunity to do so.

On the issue of "snoozing," certainly "a juror who sleeps through much of the trial testimony cannot be expected to perform his duties." *United States v. Cook*, 550 F. App'x 265, 270 (6th Cir. 2014) (quoting *United States v. Warner*, 690 F.2d 545, 555 (6th Cir. 1982)). But overturning a verdict on the basis that a juror slept through the proceedings and was therefore unable to perform his duties "is appropriate only if the [challenging party] was deprived of his Fifth Amendment due process rights or his Sixth Amendment right to an impartial jury." *Cook*, 550 F. App'x at 270 (quoting *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)).

To demonstrate this type of error, courts generally require the challenging party to demonstrate that, because of the juror's lack of attention, "the juror failed to follow some essential part of the proceedings, such that the complaining party thereby suffered resulting prejudice." *Inattention of juror from sleepiness or other cause as ground for reversal or new trial*, 59 A.L.R. 5th 1 (1998). Vague assertions that a juror was sleeping, and that such behavior prejudiced the challenging party, are generally insufficient to establish juror misconduct. *United States v. Sherrill*, 388 F.3d 535, 537–38 (6th Cir. 2004) (discussing *United States v. Newman*, 982 F.2d 665, 670 (1st Cir. 1992), *cert. denied*, 510

U.S. 812 (1993)). Rather, the party claiming prejudice "must affirmatively establish the juror's inattention." *Newman*, 982 F.2d at 670. In *United States v. Tierney*, 947 F.2d 854, 868–69 (8th Cir. 1991), for example, the court found defendant's contention that "jurors slept through the critical presentation of [defendant's] evidence and the cross-examination of witnesses" to be "too vague to establish prejudice." Similarly, the Supreme Court has found no error where evidence "suggested, at worst, that several of the jurors fell asleep at times." *Tanner v. United States*, 483 U.S. 107, 125 (1987).

Concerning Juror No. 2's alleged inattention, Plaintiff asserts only that he observed her "snoozing during the trial." ECF No. 117, PageID.959. He is concerned that these "nap sessions," when considered together with the juror's "mental anguish" and decision not to take notes, compromised her impartiality. ECF No. 117, PageID.959. The Court itself had an unobstructed view of the jury and at no point observed Juror No. 2 sleeping. *See Tanner*, 483 U.S. at 125 (finding it appropriate for trial judge to draw upon personal knowledge and recollection in considering factual allegations about juror behavior). Plaintiff has not presented evidence about Juror No. 2's alleged lack of diligence sufficient to demonstrate juror misconduct or error. As an initial matter, where a party knew of a juror's inattention during trial and failed to take proper steps to bring that behavior to the trial judge's attention, "the matter is deemed waived." *Inattention of juror*, 59 A.L.R. 5th 1. Plaintiff made no

objection to Juror No. 2's behavior during trial. Concerning the substance of Plaintiff's argument, the Court finds he has not presented affirmative evidence that Juror No. 2 fell asleep at any point during trial. And he has not shown that Juror No. 2 missed any important part of the testimony, evidence, or argument at trial that might have changed her mind as to the proper verdict.

Even the most eager juror may reach the limits of her attention span at some point during trial and permit her mind "to wander temporarily from the matter at hand." *Hassan v. Ford Motor Co.*, 650 P.2d 1171, 1190 (Cal. 1981), *cert. dismissed by Ford Motor Co. v. Hasson*, 459 U.S. 1190 (1983). Although the Court does not condone such behavior and urges trial judges to take appropriate steps to prevent juror listlessness, the mere possibility that Juror No. 2 missed an unspecified portion of testimony does not constitute error or warrant a new trial or disturbing the judgment in this case.

### C. Designating Exhibit 24 Plaintiff's (rather than Defendants') exhibit

During trial, Plaintiff observed what appeared to be a clean copy of the MDOC major-misconduct report (versions of which had previously admitted as Plaintiff's Exhibit 6 and Defendants' Exhibit A) on defense counsel's laptop screen. Defense counsel had been scrolling through documents while his display was being projected onto a large screen in the courtroom. At Plaintiff's request, the Court obtained a copy of that

18

more legible version of the misconduct report for him and then marked it as Plaintiff's Exhibit 24. Plaintiff now says that the exhibit—because it came from Defendants' files and, he says, was improperly withheld by defense counsel—should have been identified as Defendants' exhibit, rather than his own. The Court, however, finds no error or prejudice to Plaintiff by having identified evidence he intended to use at trial as his Exhibit 24.

As soon as Plaintiff brought the existence of the more legible version of the misconduct report to this Court's attention, the Court instructed defense counsel to provide the document to Plaintiff, and to the Court. The Court acknowledged that Plaintiff's desire to obtain "the best evidence" in the form of a "cleaner copy of an exhibit" was a request both "simple" and "reasonable." The Court even sua sponte questioned Defendant Freed, who was already on the stand, about why Exhibit 24 was more legible than versions of the misconduct report previously marked as Plaintiff's Exhibit 6 and Defendants' Exhibit A. Freed explained that the difference likely stemmed from the fact that Exhibit 24 appeared to be a copy of the top portion of a multi-layer pressure-sensitive form, while the other exhibits were likely copies of the bottom portion, causing the handwriting on those versions to be less visible. *Id.*

After the question concerning the origination of the more legible misconduct report and differences between that version and other versions of the misconduct report was resolved, the Court asked, "Would

19

either side like to have this marked as an exhibit?" Plaintiff initially responded, "Yes, your Honor. I want to mark this as Exhibit 2[4]."[1] Plaintiff then changed tack, explaining that, because Defendants had produced the document, it should be marked as their exhibit rather than his. The Court nonetheless marked the exhibit as Plaintiff's Exhibit 24. And Plaintiff proceeded to question Defendant Freed about the document.

Although Plaintiff contends that marking the more legible misconduct report as his—rather than Defendants'—Exhibit 24 confused the jury and caused him to suffer prejudice, it was Plaintiff who identified Exhibit 24 as evidence he wished to present to the jury and to question his witness about. Moreover, Plaintiff explained to the jury that the exhibit had originated with the Defendants, so there was no lack of clarity that the document came from the State. Accordingly, it was not improper for the Court to mark the exhibit as Plaintiff's Exhibit 24. He is not entitled to a new trial or to revision of the judgment based on how the Court chose to identify this exhibit.

### D. Failure to sanction alleged misconduct by defense counsel

Discovery of the legible major-misconduct report on defense counsel's laptop during trial—later marked as Plaintiff's Exhibit 24—

---

[1] Plaintiff actually asked that the document be marked as his Exhibit 23 but another document has already been marked as Exhibit 23. Accordingly, the more legible misconduct report was marked as Plaintiff's Exhibit 24.

also led Plaintiff to allege misconduct on the part of defense counsel in not earlier disclosing that document. Nondisclosure of the clean version of the major-misconduct report, Plaintiff asserts, "denied [him] a fair trial because he could not prepare an adequate defense and argument against the original copy to the jury." ECF No. 117, PageID.963. Although defense counsel has not explained why the better version of the misconduct report (an MDOC document) was not produced during discovery, Plaintiff has not met the high bar of establishing attorney misconduct worthy of a new trial or alteration of the judgment.

To warrant a new trial on the basis of attorney misconduct, the movant must make a "concrete showing" that the misconduct "'consistently permeated' the trial such that the moving party was unfairly prejudiced by the misconduct." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 312 (6th Cir. 2016) (quoting *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 835 (6th Cir. 2013)). The only manner in which attorney misconduct would conceivably warrant altering an existing judgment under Rule 59(e) would be if altering the judgment was necessary to "prevent manifest injustice." Fed. R. Civ. P 59(e).

Plaintiff has not shown that defense counsel's alleged misconduct "permeated" the trial, or that his failure to disclose Exhibit 24 prior to trial caused Plaintiff to suffer manifest injustice. Although the Court questions why the more legible version of the major-misconduct report was not produced earlier, defense counsel's failure to turn over that

21

document was not plainly intentional. Even if defense counsel purposely withheld the document, Plaintiff has not established that such misconduct was a pattern apparent throughout trial, or that he was ultimately prejudiced by defense counsel's conduct (or this Court's failure to sanction it).

Ultimately, Plaintiff's Exhibit 24, Plaintiff's Exhibit 6, and Defendants' Exhibit A are versions of the same document. The major differences are that some of the handwriting visible on Exhibit 24 is not legible on Exhibits 6 and A, and that Exhibits 6 and A contain typewritten notes added by Plaintiff. Essentially, Exhibit 24 is a better version of Exhibits 6 and A. But Exhibit 24 did not include information central to proving the elements of Plaintiff's claims that was not already present in other versions of that document. Nor was Exhibit 24 so different from other versions of the misconduct report that Plaintiff was prejudiced by discovering the document only at trial and not having the benefit of months of preparation to review it. Moreover, Exhibit 24 was ultimately introduced at trial and Plaintiff was allowed to question his witness about it. The exhibit was also provided to the jury so that they could examine it at leisure during deliberations. Plaintiff has not shown that defense counsel's failure to turn over Exhibit 24, or this Court's decision not to sanction that conduct, entitles him to a new trial under Rule 59(a), or alteration of the judgment under Rule 59(e).

### E. Decision to limit what Plaintiff could tell jury about the origin of Plaintiff's Exhibit 24

Plaintiff also takes issue with the Court's instruction that during witness questioning he could explain only that Exhibit 24 came from the MDOC—not that it had been discovered by Plaintiff on defense counsel's laptop screen, or allegedly improperly withheld before trial. ECF No. 117, PageID.964. This ruling, Plaintiff contends, was prejudicial. But the Court's instruction that Plaintiff could not provide commentary about the nature and source of the document during witness questioning was not erroneous or prejudicial and he is therefore not entitled to relief on this claim.

After a sidebar on the issue, the Court instructed Plaintiff that in questioning Freed he would not be permitted to refer to Exhibit 24's existence as indicative of "bad conduct by the state or for lack of a better word, conspiracy" or to suggest "that the document was created for some nefarious reason because you happen to believe that." Instead, the Court instructed Plaintiff that he could ask the witness questions about the document, point out what its contents were, and ask questions about any discrepancies between Exhibit 24 and Exhibits 6 and A. If a witness recognized the document to be a forgery, the Court explained, it would be up to the witness to testify to that conclusion. Plaintiff, in examining witnesses, would not be permitted to characterize the documents as such.

The practice of reading unfamiliar documents into the record and

23

then asking a witness to confirm what was read or to provide an unwitting reaction or interpretation is not permitted under the Federal Rules of Evidence. *See* Fed. R. Evid. 602. Such a practice represents "a vehicle to improperly enable . . . counsel to testify and argue the case." *In re: E.I. Du Pont De Nemours and Co. C-8 Pers. Inj. Litig.*, No. 2:13-cv-170, 2016 WL 659112, at \*54 (S.D. Ohio Feb. 17, 2016). The Court's instruction that Plaintiff should not introduce Exhibit 24 to the witness by himself describing or characterizing it is consistent with Rule 602. Fed R. Evid. 602. Plaintiff has not demonstrated that the Court's ruling was in error, or that it otherwise entitles him to a new trial or amendment of the judgment under Rule 59(a) or 59(e).

### F. Granting Rule 50 judgment in favor of Defendant Freed

Next, Plaintiff challenges the Court's decision to enter judgment as a matter of law in favor of Defendant Freed on his Fourteenth Amendment due process claim for failure to gather potentially exculpatory evidence in advance of the misconduct hearing. *See* ECF No. 105. He argues that the Court erred in holding that he had not identified any cognizable liberty interest, and that his claim failed as a matter of law without that required element. ECF No. 117, PageID.965–66. The Court has already analyzed this issue in detail and need not revisit it on a Rule 59 motion. *See Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) ("[P]arties cannot use a motion for reconsideration [under Rule 59(e)] to raise new legal arguments that

24

could have been raised before a judgment was issued."). Having taken the relevant facts and law into account, the Court previously determined Plaintiff was unable to identify loss of a liberty interest that rose to the level of an "atypical and significant hardship" in the prison context. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Granting judgment as a matter of law in favor of Freed was appropriate under governing law.

Not every state action motivated by a punitive purpose encroaches upon a liberty interest protected by the Fourteenth Amendment's due process clause. *See Sandin*, 515 U.S. at 484. In the case of individuals who are lawfully incarcerated as the result of a criminal conviction, some privileges and rights are necessarily withdrawn. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). In *Sandin v. Conner*, the Supreme Court held that transferring an inmate to segregated confinement for 30 days after he was found guilty of "high misconduct" following a hearing did not implicate a constitutional liberty interest created by the state. 515 U.S. at 486. The type of confinement the *Sandin* plaintiff was subjected to as a result of the misconduct hearing, the Court reasoned, "was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. The import of *Sandin* is that a state creates a protected liberty interest in prison disciplinary proceedings only where the sanction at issue "will inevitably affect the duration of [the inmate's] sentence" or "impose atypical and significant hardship on the inmate in relation to the

25

ordinary incidents of prison life." 515 U.S. at 483–84.

Plaintiff urges that he had a liberty interest in "his property withheld from him, refusal of mail, visits, phone time, religious service, and access to yard activities; all restricted while in segregation" because of a disciplinary hearing lacking in due process. ECF No. 117, PageID.966. Being placed in administrative segregation and losing access to communication with loved ones, outdoor activity, and other basic privileges is unquestionably an immensely difficult hardship for any person. But in terms of legal precedent, such a loss of privileges does not implicate a liberty interest under the Fourteenth Amendment's due process clause. Such a finding is foreclosed by *Sandin*, in which the Supreme Court held that being placed in segregated confinement for 30 days, with the associated loss of the few privileges and comforts afforded inmates in the first place, does not implicate a constitutional liberty interest.

Although Plaintiff offers several cases in support of his argument— and the Court has read them—none of those cases allow him to sidestep the Supreme Court's opinion in *Sandin*. As an initial matter, all of the cases Plaintiff provides, with the exception of the Tennessee state-court case, predate *Sandin*, which is binding precedent on this Court. Further, *Procunier v. Martinez*, 416 U.S. 396 (1974) did not involve a prison disciplinary hearing and was expressly overruled by *Thornburg v. Abbott*, 490 U.S. 401, 413 (1989). Next, *Cale v. Johnson*, 861 F.2d 943 (6th Cir.

1988), *abrogated by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), involved a *Bivens* action in which the plaintiff alleged violation of Fifth Amendment substantive due process, rather than Fourteenth Amendment procedural due process, which is at issue here. The Supreme Court's opinion in *Turner v. Safley*, 482 U.S. 78 (1987) provided a standard for assessing the constitutionality of prison policies but did not address the question of when a state creates a protected liberty interest in prison disciplinary proceedings. Similarly, *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994) stemmed from a challenge to the constitutionality of prison phone policies and did not squarely address the issue of liberty interests. Finally, the Tennessee Court of Appeals case Plaintiff cites, *Jeffries v. Tenn. Dep't of Corrections*, 108 S.W.3d 862 (Tenn. Ct. App. 2002) is not binding on this Court and held only that prisoners have a property interest in their trust-fund accounts that the Tennessee Department of Corrections could not confiscate prisoners' money without due process of law. As such, *Jeffries* is not on all fours with this case, which did not involve removal of funds from Plaintiff's MDOC trust-fund account.

## II.   Newly discovered evidence

As another ground for relief, Plaintiff claims to have newly discovered evidence relating to one of the trial witnesses, Shannon Flaugher, and to Defendant Freed, that warrants altering or amending the judgment under Rule 59(e). According to Plaintiff, since trial he has

27

learned that "Flaugher intentionally interfered with someone else's grievance activities at the Saginaw Correctional Facility, just as she did in Plaintiff's case." ECF No. 117, PageID.967. Concerning Freed, Plaintiff says he recently discovered that "Freed admitted to improperly disposing of documents related to someone else's misconduct hearing." ECF No. 117, PageID969.

A Court may grant a Rule 59(e) motion to alter or amend based on, among other bases, newly discovered evidence. That newly discovered evidence must have been previously unavailable and "of such a nature as would probably produce a different result." *Doe v. Baum*, 282 F. Supp. 3d 972, 978 (E.D. Mich. 2017) (quoting *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1117 (10th Cir. 2013)). The "same standard applies" to motions brought on the basis of newly discovered evidence, whether those motions are brought under Rule 59(e) or Rule 60(b)(2). *Doe v. Baum*, 282 F. Supp. 3d at 978 (quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2859 (3d Ed. 2012)).

### A. Flaugher email

Concerning Flaugher, Plaintiff references evidence produced in another case involving the Saginaw Correctional Facility, *Kitchen v. Winn*, No. 2:17-cv-11627, 2019 WL 1512778 (E.D. Mich. Apr. 8, 2019). In that case, discovery yielded an email from Flaugher to another MDOC employee, Russell Vittitow. That email, available at No. 2:17-cv-11627, ECF No. 38-1, PageID.457, states, in its entirety:

FYI…..

Fuqua was moved back over here for some reason. I overheard him talking to Kitchen about a grievance and Kitchen said he is going to keep pushing them through for him. It sounds like Kitchen is still writing his grievances and pushing him to grieve it."

The plaintiff in *Kitchen* presented this email in support his argument that Flaugher had instructed Vittitow to monitor his grievance-filing activity, and that Vittitow then improperly rejected the grievance to help another MDOC employee retaliate against plaintiff. *Kitchen*, 2019 WL 1512778, at *6. According to Plaintiff in this case, the email demonstrates that Flaugher had "a pattern of interfering with grievance activities," and that her testimony at trial was disingenuous. ECF No. 117, PageID.968.

As an initial matter, this email was filed on the *Kitchen* docket in November 2018, almost one year before the trial in this matter. The Sixth Circuit has held that to constitute "newly discovered evidence," the evidence must have been "previously unavailable." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 617 (6th Cir. 2010). In contrast, evidence was previously available if it could have been found and submitted to the court "in the exercise of reasonable diligence." *Hurst v. Fed. Nat'l Mortg. Ass'n*, No. 14-cv-10942, 2015 WL 1757225, at *1 (E.D. Mich. Apr. 17, 2015) (citation omitted). This due diligence inquiry should, however, take into account limitations on Plaintiff's ability to identify

relevant evidence before trial. *See Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004). Here, the Court is cognizant that, because he has been incarcerated during the pendency of this litigation, Plaintiff's opportunities to conduct research and investigation were limited. The Court will accordingly cut Plaintiff some slack and assume he could not have discovered the Flaugher email before trial. *Davis v. United States*, No. 08-184-ART, 2010 WL 5014533, at \*4 (E.D. Ky. Dec. 3, 2010).

But the Court is not convinced that the Flaugher email would have been admissible at trial. *See Rhoden v. Campbell*, 202 F.3d 269 (Table) (6th Cir. 1999) (explaining that newly discovered evidence must be "admissible and credible"). The email would likely have been ruled inadmissible on relevance grounds. Only relevant evidence is admissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would have been without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, Flaugher was not a Defendant at the time of trial, and Plaintiff's conspiracy claim had been dismissed on summary judgment. Presumably, Plaintiff considers the email relevant to his First Amendment retaliation claim against Hoffman. But even assuming the email shows a tendency on the part of Flaugher to monitor prisoner grievance-filing, or to improperly deny grievances, that is not plainly relevant the question of whether *Hoffman* falsified a misconduct report

to punish Plaintiff for filing grievances.

Even assuming the email is relevant, Rule 404(b) prohibits admission of evidence of "a crime, wrong, or other act" for the purpose of proving a person's character "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Although Plaintiff frames the email as evidence of a "habit" Flaugher had of interfering with prisoner grievance-filing, an improper refusal of a prisoner's legitimate grievance is more of a "bad act" than a "habit" as the term "habit" is understood in the context of Rule 406. *See* Fed. R. Evid. 404(b), 406. As stated by another court in this district, "one previous bad act does not constitute a habit or routine." *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 275 (E.D. Mich. 2009).

Finally, had the Flaugher email been discovered by plaintiff before judgment was entered in this case, the Court is not convinced it would have resulted in a different disposition. Plaintiff's First Amendment retaliation claim was against Hoffman, not Flaugher. Nowhere in his discussion of the email does Plaintiff explain why it would have helped prove the elements of his claim against Hoffman (or Freed), other than by potentially placing Flaugher, another MDOC employee, in a bad light. Nor does Plaintiff explain if the email could have been used to impeach Flaugher's testimony in any way. Even if the email had been admitted, which seems doubtful at best, its impact would only have been to allow

the jury to cast suspicion as to why MDOC employees so closely monitor prisoners' filing of grievances; nothing in the email would tip the scales in Plaintiff's favor. The Flaugher email does not warrant altering the judgment.

### B. Freed's prior destruction of prisoner documents

Concerning Defendant Freed, Plaintiff claims to have discovered new evidence that Freed "admitted to improperly disposing of documents related to someone else's misconduct hearing." ECF No. 117, PageID.969. Plaintiff cites to evidence from a 2010 case in this district, *Johnson v. Freed*, Case No. 09-CV-14371, 2010 WL 3906891, at *2 (E.D. Mich. 2010). In that case, the plaintiff alleged that Freed had acknowledged destroying court records belonging to him "without advance notice as required by prison policy." *Id. See Freed*, Case No. 09-CV-14371, ECF No. 1, PageID.9 (Compl.). But the exhibits attached to the complaint in that case, which Plaintiff cites as newly discovered evidence, do not clearly establish that Freed admitted to inappropriately destroying documents.

One of the documents is a major-misconduct hearing report finding that the *Freed* plaintiff had possessed forged documents in violation of MDOC policy. *See Freed*, Case No. 09-CV-14371, ECF No. 1, PageID.27. Under the heading "Reason for Finding," the April 27, 2005 hearing report states, "Prisoner indicates he wants to send these items home, so it is given to staff to arrange for him to mail home within 90 days." *Id.* The second document Plaintiff presents as newly discovered evidence is

a 2007 memorandum from a Saginaw Correctional Facility Grievance Coordinator summarizing findings of an investigation into the plaintiff-grievant's allegation that Freed, a Hearing Investigator, destroyed documents in violation of prison policy. *Id.* at PageID.41. The memorandum explained that the *Freed* plaintiff had been found guilty of possessing contraband documents multiple times, after three separate misconduct hearings that took place on March 1, 2005, March 14, 2005, and April 27, 2005. *Id.* It then concludes that the plaintiff failed to mail the documents home despite being instructed to do so after each hearing. *Id.* at PageID.43. Freed, according to the memorandum, acknowledged destroying the documents 115 days after the plaintiff was told, the third time, to mail them home. *Id.* at PageID.43. Nothing about the memorandum indicates that Freed destroyed the documents in violation of MDOC policy.

The two documents Plaintiff describes as newly discovered evidence relating to Freed were docketed in *Freed*, Case No. 09-CV-14371, back in 2009, almost a decade before the trial in this case. Even giving Plaintiff the benefit of the doubt on the question of whether these documents could have been earlier discovered through the reasonable exercise of diligence, the Court finds they do not warrant revisiting the judgment in this case. The documents do not appear to establish any previous wrongdoing on the part of Freed. Even if they did, they have no relevance to this case. While they might have been used for impeachment, there is no reason to

33

believe that such use, or their possible admission before or during trial, would have resulted in a different judgment.

## III.   Verdict not supported by the weight of the evidence

Finally, Plaintiff argues that the jury verdict in favor of Defendant Hoffman was not supported by the weight of the evidence, and that a new trial is therefore warranted under Rule 59(a) of the Federal Rules of Civil Procedure. Again, Rule 59(a) provides that a new trial may be granted "for any of the reasons for which new [jury] trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). That includes a "seriously erroneous result" reached by a jury that is "against the weight of the evidence." *Holmes*, 78 F.3d at 1045–46 (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

When deciding a motion for a new trial on the basis that the verdict is against the weight of the evidence, "the court is not to set aside the verdict simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (citing *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)). Rather, the district court must accept the jury's verdict "if it is one which reasonably could have been reached." *Denhof*, 494 F.3d at 543. *See Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) (explaining that "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judge feel that other results are more reasonable")

34

(internal quotation marks omitted).

Here, the Court finds no indication that the verdict was against the weight of the evidence. Although proceeding pro se, Plaintiff ably presented evidence and argument in support of his case. *See* ECF No. 970–72. But his argument that the Defendants provided "nothing but denial of guilt" fails to acknowledge that Plaintiff himself had the burden of proving his case at trial by a preponderance of the evidence. *Id.* at PageID.970. The jury weighed the evidence presented at trial and reached a verdict that to the Court appears reasonable and clearly supported by the evidence.

## IV. Supplemental evidence submitted by Plaintiff

Plaintiff attempted to file additional evidence with the Court on December 5, 2019 and successfully submitted a different document as additional evidence on December 27, 2019, the details of which will be explained below. ECF Nos. 121, 122. The Court will consider this material under Rule 60(b)(2) because it was submitted more than 28 days after judgment was entered in the case. Ultimately, the evidence and argument Plaintiff submitted in December does not warrant revision of the judgment under Rule 60(b)(2).

Plaintiff's December 5, 2019 filing states that he "hereby files with the court the attached document from the Michigan State Police Freedom of Information Act Coordinator." ECF No. 121, PageID.992. But no document appears to have been attached; or at least it was not docketed.

35

The Court received only Plaintiff's brief, which explains that the document from the FOIA Coordinator "verified that no record exist[s]" of the Michigan State Police having received any communication or information from the MDOC about a weapon being found in Plaintiff's cell. *Id.* at 993.

This document may have been relevant at trial because the misconduct hearing report marked as Defendants' Exhibit B stated that "[t]he weapon [found in Plaintiff's cell] shall be turned over to Michigan State Police" in accordance with MDOC policy. Accordingly, Plaintiff argues that this described newly discovered evidence—which did not reach the Court—would have established that no weapon was ever found in his cell. In addition to the problem that this new document never reached the Court, Plaintiff has not explained why he could not have sent his FOIA request to the Michigan State Police before trial. Further, although this piece of evidence (as described) would likely have been helpful to Plaintiff's case, it is unlikely that it would resulted in a different disposition of the case. There may have been plausible explanations as to why the weapon never made it to the Michigan State Police.

The second document, which Plaintiff successfully attached to his December 27, 2019 filing, was obtained through a FOIA request to the Michigan Department of Corrections. ECF No. 122, PageID.1004. The document comprises copies of logbook entries for Plaintiff's unit at the

Saginaw Correctional Facility for June 7, 2013, the date Hoffman supposedly discovered the weapon in his cell. *Id.* at PageID.1004–1008. The log confirms that Hoffman was staffed on Plaintiff's unit the day of the search. ECF No. 122, PageID.1006 ("Log reviewed—ARUS Hoff"). The handwriting in the log is difficult to read but there appears to be no entry specifically describing a search of Plaintiff's cell. The only time he is mentioned in the log is an entry that reads "Per [illegible], Alexander 731077 from 5-191 to 6-127, 188 now [illegible]." ECF No. 122, PageID.1006. Plaintiff characterizes the entry as describing his transfer to segregation, as a result of the weapon being found. Before that entry are several others that state, simply, "rounds." ECF No. 122, PageID.1006.

Hoffman testified at trial that she was familiar with, and had never violated, MDOC rules, policies, or protocols. She also suggested, through her testimony, that the log book would be a way to determine whether she had conducted cell searches during 2013. But Hoffman never specifically testified that she had recorded her June 7 search of Plaintiff's cell in the log book. Given that she testified to "regularly" conducting routine searches of prisoners' cells in her MDOC role and would sometimes search multiple prisoners' cells during a shift, it is plausible that Hoffman conducted the search of Plaintiff's cell during her "rounds." As such, the Court does not find that the log books warrant revisiting the judgment in this case.

37

## CONCLUSION

For these reasons, the motion for a new trial or to amend the judgment (ECF No. 117) is **DENIED**. As to Plaintiff's motion for limited additional discovery (ECF No. 118), the new evidence Plaintiff hopes to discover, which allegedly involves witness Flaugher, is not plainly relevant to establishing the elements of his claims, *see supra* at 28–32, and he has not otherwise shown that post-trial discovery is warranted. Consequently, the motion for limited discovery is also **DENIED**.

Plaintiff has availed himself of his right to a federal jury trial to adjudicate his civil claims against employees of the State of Michigan. In the Court's view, though he did not prevail he enjoyed a full and fair trial of his claims. His remedy for any perceived errors in that process now lies with the court of appeals.

**IT IS SO ORDERED.**

s/Terrence G. Berg

Dated: June 3, 2020      TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

38